KOBZA, Appellant,

v.

GENERAL MOTORS CORPORATION, Appellee.

[Cite as *Kobza v. General Motors Corp.* (1989), 63 Ohio App.3d 742.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55691.

Decided Aug. 14, 1989.

*Apicella & Trapp, F.M. Apicella* and *M.J. Trapp,* for appellant.

*Weston, Hurd, Fallon, Paisley & Howley* and *Harry Sigmier,* for appellee.

PAUL H. MITROVICH, Judge.

This is an appeal from a decision granting a directed verdict for defendant-appellee, General Motors Corporation, in a suit brought by plaintiff-appellant, Daryle Kobza, for strict liability in tort for defective design of a 1976 Chevrolet Camaro ("Camaro").

On July 16, 1985, appellant took his automobile to Carmen Sottosanti's automobile shop for repairs. While in the shop, appellant stood between the parked Camaro and a parked pickup truck. A shop employee attempted to move the Camaro. When the employee started the automobile, it lurched forward crushing appellant's leg between the bumpers of the Camaro and the truck. Appellant alleged the Camaro was defectively designed because the employee was able to start the engine with the transmission in drive despite the fact that the transmission was automatic.

As manufactured, the Camaro was equipped with a neutral safety switch which prevented the engine from starting unless the transmission was in park or neutral gear. However, upon inspection after the accident, the transmission's external linkage which contained the neutral safety switch was missing. As a result, the engine could also be started when the transmission was in either the drive or reverse gear.

Appellant's expert testified that the linkage parts did not fall off in normal usage but rather someone must have manually removed the parts. Moreover, appellant's expert testified that if the linkage parts had not been removed, the accident would not have happened.

At the close of appellant's case, appellee made a motion for a directed verdict on the grounds that there had been a substantial change in the condition of the Camaro from the time it had been sold. The court granted the motion and appellant now raises three assignments of error:

"I. The trial court erred in granting defendant's, General Motors Corporation['s], motion for directed verdict at the close of plaintiff's case in that there was expert testimony submitted by plaintiff to establish that defendant's automobile was defectively designed and that such product defect was a proximate cause of plaintiff's injury requiring jury determination of the facts.

"II. The trial court erred in deciding as a matter of law that the alteration of the automobile was a complete defense in this strict liability product design case, despite expert testimony that it was reasonably foreseeable that this alteration would occur and that the benefits of the challenged design did not outweigh the risk inherent in such design.

"III. The trial court erred in granting defendant's General Motors Corporation['s], Motion for directed verdict at the close of plaintiff's case where there was no evidence that plaintiff voluntarily and knowingly assumed the risk occasioned by the defect or that the plaintiff misused the product in an unforseeable [sic] manner, but where there was evidence that the automobile was being used in an intended or 'reasonably foreseeable manner.' "

■ Appellant's three assignments of error are interrelated and will be discussed jointly. Appellant contends that the court erred in granting a directed verdict for appellee because the Camaro was defectively designed, since it was foreseeable that the transmission's external linkage system could be removed. These contentions are without merit.

In *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 280, 31 OBR 559, 561, 511 N.E.2d 373, 375, the Supreme Court of Ohio explained that in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, it formally adopted Section 402A of the Restatement of Law 2d, Torts (1965), as the law of Ohio. Paragraph one of the syllabus in *Temple*, taken from subsection one of Section 402A, provides:

"1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, *and*

"(b) it is expected to and *does reach the user or consumer without substantial change in the condition in which it is sold.*"   (Emphasis added.)

■   Therefore, it is now clearly the law in Ohio that a claim for strict liability in tort cannot be maintained if there has been a material alteration to the defective product once it has left the manufacturer's control, and if this material alteration significantly contributed to the plaintiff's injury.  *Littleton v. Ex–Cello Micromatic Hone Co.* (Mar. 22, 1984), Cuyahoga App. No. 47141), unreported, at 2, 1984 WL 4573, *citing King v. K.R. Wilson Co.* (1983), 8 Ohio St.3d 9, 8 OBR 79, 455 N.E.2d 1282 and *Temple, supra.*

■   Substantial change is defined as *any* change which increases the likelihood of a malfunction, which is the proximate cause of the harm complained of, and which is independent of the expected and intended use to which the product is put.  *Fireman's Fund Ins. Co. v. Clark Equip. Co.* (Aug. 14, 1986), Cuyahoga App. No. 50372, unreported at 23–24, 1986 WL 8984.

The Camaro in question was ten years old at the time of the accident. Mileage on the car was between the range of 175,000 to 225,000 miles.[1]  It is undisputed that the entire linkage system was missing from the Camaro. Appellant's expert testified that someone *must* have manually removed the linkage system as it was unlikely that the entire system would have completely fallen off during normal usage.[2]  Moreover, the expert testified that this accident would not have happened if the linkage parts had been on the Camaro because the engine would have been unstartable in the drive gear.

Appellant's argument that it was foreseeable that the linkage system could be removed and that such constituted a design defect is without merit.  Any automobile part can be removed.  Otherwise, cars could not be repaired by removing and replacing worn parts.  It is without question that if the linkage parts had been replaced following their removal this accident would not have happened.  Therefore, we fail to see how the linkage system was defectively designed because it was foreseeable that the linkage system was removable.

---

1.   Appellant's expert testified that the Camaro's engine or transmission had been changed at approximately 150,000 miles.  When he inspected the vehicle, the odometer showed 25,000 miles.  Thus, the expert was of the opinion that assuming the odometer was original and unchanged, the Camaro had roughly 225,000 miles on it.

2.   He believed the whole system was manually removed prior to the accident because there were not any remnants of the linkage parts on the Camaro.

A motion for a directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935, paragraph one of the syllabus. We find that the court did not err by granting appellee's motion for directed verdict. Appellant's claim for strict liability in tort is barred because there was a substantial change in the condition of the Camaro's linkage system from which it was sold.

Accordingly, appellant's three assignments of error are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PATTON, P.J., and PARRINO, J., concur.

PAUL H. MITROVICH, J., of the Court of Common Pleas of Lake County; and THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.