DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment entered by the Scioto County Common Pleas Court, upon a jury verdict, in favor of Elmo and Nancy Keller, plaintiffs below and appellees herein, on their adverse possession claim against Lucy Russell, defendant below and appellant herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY PERMITTING APPELLEES TO AMEND THE COMPLAINT THREE AND ONE-HALF YEARS AFTER THE FILING OF THE ORIGINAL COMPLAINT WHEN DISCOVERY HAD BEEN COMPLETED, THE CAUSE OF ACTION WAS MATERIALLY CHANGED AND THE MOTION TO AMEND WAS FILED ON NOVEMBER 5, 1997, JUST FOURTEEN DAYS PRIOR TO TRIAL, THUS CAUSING THE TRIAL TO BE CONTINUED."
SECOND ASSIGNMENT OF ERROR:
 "THE COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT FILED ON JANUARY 7, 1996, AND FOR NOT RULING ON APPELLANT'S MOTION FOR LEAVE TO FILE A SUMMARY JUDGMENT FILED ON FEBRUARY 3, 1999."
THIRD ASSIGNMENT OF ERROR:
 "THE COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR A DIRECTED VERDICT AT THE CONCLUSION OF THE APPELLEES' CASE WHEN NEITHER THE COMPLAINT, NOR THE EVIDENCE AT TRIAL, DESCRIBED THE PROPERTY ALLEGEDLY ACQUIRED BY ADVERSE POSSESSION, OR THOSE ITEMS REQUIRED BY GRACE v. KOCH, 81 OHIO ST. 3d 577."[1]
FOURTH ASSIGNMENT OF ERROR:
 "THE COURT ERRED BY ADMITTING INTO EVIDENCE A DRAWING BY A SURVEYOR AFTER THE APPELLEES HAD RESTED THEIR CASE, WHEN IT WAS OVER OBJECTIONS AS THERE WAS NO FOUNDATION LAID FOR ITS ADMISSION AND THE SURVEYOR WAS NOT CALLED TO TESTIFY AS TO THE PREPARATION OF THE DOCUMENT, NOR AS WITNESS, EXPERT OR OTHERWISE."
FIFTH ASSIGNMENT OF ERROR:
 "THE COURT ERRED IN INCLUDING IN THE JUDGMENT ENTRY FILED JUNE 23, 1999 A LEGAL DESCRIPTION NOT PRESENTED IN COURT AND PREPARED BY A SURVEYOR THAT DID NOT TESTIFY AT THE TRIAL, NOR AT THE HEARING ON OBJECTIONS TO THE PROPOSED ENTRY."
A brief summary of the facts pertinent to the cause subjudice is as follows. This case involves a boundary dispute between contiguous property owners in the Hogan Subdivision No. 2 of Clay Township, Scioto County, Ohio. Appellees are the owners of Lot 8 and twenty-five (25) feet of Lot 7, whereas appellant owns the remaining portion of Lot 7 and all of Lot 6 directly to the north. In the early 1950s, appellees' predecessor in title built a fence along what he considered to be the boundary line between the two (2) properties. The fence line was not the true boundary, however, but was mistakenly constructed roughly eight (8) feet onto the land owned by appellant's predecessor in title. Nobody discovered this error for nearly forty (40) years.
Appellant bought her property in February of 1994 and commissioned a survey several months later. When the survey was completed, it revealed that the fence was not the true boundary between the parcels but actually encroached on her land. The survey further revealed that a portion of appellees' home, including an addition and a porch, extended over the boundary line onto appellant's property. Appellees were skeptical when first informed of the alleged encroachment, but then had their own survey performed which confirmed appellant's findings.
The discovery of this problem did not initially affect the relationship between the neighbors and they remained cordial to one another. Mr. Keller even volunteered to "move" whatever he could back onto his own property. At some point, however, Ronald Sparks, appellant's fiancee, took it upon himself to remove the fence and tear out a garden that appellees had planted in the disputed area. Suffice it to say that the relationship between the neighbors deteriorated rapidly thereafter.
Appellees commenced the action below on August 11, 1995, seeking to "establish the common boundary line between the [two] properties." They also alleged trespass onto their land and sought damages in the amount of $20,000 for destruction to their garden and landscaping.[2] Appellant filed an answer denying the material allegations of their complaint as well as a counterclaim for trespass to which appellees filed a general denial.
On November 4, 1997, appellees filed a motion for leave to amend their complaint for the purported purpose of clarifying that they were seeking to establish title to the disputed eight (8) foot strip of property by adverse possession. Appellant filed a memorandum in opposition. On January 20, 1999, the trial court granted appellees' motion and the appellees' filed their amended complaint. Appellant thereupon filed an amended answer and counterclaim.
During the pendency of this case below, appellant also sought leave of court on several occasions to file a motion for summary judgment. The first instance was on January 7, 1997, but her motion was overruled by the trial court a week later.[3]
Appellant made a second request on February 3, 1999, but there is no indication in the record that the trial court ever ruled on this later motion.
The matter ultimately proceeded to a jury trial beginning on May 10, 1999, at which time appellees agreed to dismiss their trespass claim and proceed solely on the issue of adverse possession.[4] A number of prior owners of both tracts were called as witnesses and, without exception, they all testified to the effect that everyone since 1950s had operated under the assumption that the fence between the two (2) properties marked the boundary line. No evidence was ever introduced to show that appellees or their predecessors in title had intentionally tried to encroach or take the disputed area of land. Rather, there was simply a mutual mistake on the part of the prior owners that the fence line constituted the boundary between the two (2) properties.
At the close of appellees' case in chief appellant moved for a directed verdict. Appellant claimed that the elements of adverse possession had not been shown. The trial court overruled appellant's motion. After the evidence was submitted, the jury returned a verdict in appellees' favor.
Subsequently, a judgment entry, which included a legal description for that portion of the property acquired through adverse possession, was prepared and circulated for review. Appellant objected to the proposed entry arguing that a legal description for the disputed property had never been introduced at trial. Thus, she asserted, any attempt to delineate a metes and bounds description of the land was nothing more than sheer "speculation." Appellees filed an opposing memorandum arguing that the legal description used in the proposed entry had been prepared by another surveyor from the "calls and measurements" set forth in the survey prepared for appellee in 1994.[5] It was pointed out that the original survey had been used by both parties during these proceedings and that no questions had been raised as to the survey's validity or authenticity. Appellees concluded that their proposed metes and bounds description should be accepted given that it was based on the original survey.
The trial court conducted a hearing on this issue and on June 23, 1999, the court overruled appellant's objections. Judgment on the jury verdict, which included the contested metes and bounds legal description, was filed the same day. This appeal followed.
 I
Appellant's first assignment of error is directed to the trial court's January 20, 1999 entry granting appellees leave to amend their complaint. Appellant argues that such leave, granted more than three (3) years after the action was commenced, was improper and amounts to reversible error. We disagree.
Our analysis begins with the provisions of Civ.R. 15(A) which state in pertinent part that parties may amend their pleading by leave of court and that such leave "shall be freely given when justice so requires." This Court, and others, have long noted that the ultimate decision to grant leave to amend a pleading is vested in the sound discretion of the trial court and its decision on such matters will not be reversed absent a showing of an abuse of that discretion. See Easterling v. Am.Olean Tile Co., Inc. (1991), 75 Ohio App.3d 846, 850,600 N.E.2d 1088, 1091; Solowitch v. Bennett (1982), 8 Ohio App.3d 115, 116,456 N.E.2d 562, 563; Shaw v. Central Oil Asphalt Corp. (1981),5 Ohio App.3d 42, 56, 449 N.E.2d 3, 8; Dept. of Taxation v.Cemetery Mgt. Serv. Co. (1981), 2 Ohio App.3d 115, 117,440 N.E.2d 1222, 1224. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See e.g. Landis v.Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342,695 N.E.2d 1140, 1142; Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 448, 659 N.E.2d 1242, 1249; State ex rel. Solomon v.Police Firemen's Disability Pension Fund Bd. of Trustees
(1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486, 488. This is a difficult standard to meet and appellant has not persuaded us that in the instant case the trial court's decision constitutes an abuse of discretion.
Appellant's frustration over the proposed amendment was understandable. This case had been pending for a little more than two (2) years when appellees first sought leave to amend their complaint and more than three and a half (3 1/2) years when leave was ultimately granted.[6] The nature of appellees' claim was also altered somewhat from a general action to resolve a boundary dispute to a more express cause seeking acquisition of title by adverse possession. Further, the decision granting leave to amend led to a two (2) month additional delay in the scheduled trial of this matter. That being said, we nevertheless find no abuse of discretion in the trial court's decision.
Ohio law endorses a liberal policy of allowing amendments when the allowance is not sought in bad faith and it would not cause undue delay or prejudice to the opposing party. SeeBarrette v. Lopez (1999), 132 Ohio App.3d 406, 725 N.E.2d 314;Body, Vickers Daniels v. Custom Machine, Inc. (1991), 77 Ohio App.3d 587,591, 602 N.E.2d 1237, 1239-1240. We find nothing in the record to even remotely suggest that appellees sought to amend their complaint in bad faith. Further, while we recognize that this case was pending for a relatively long period of time, we do not believe that the two (2) month continuance given as a result of the trial court granting leave to amend constituted an "undue delay." Consequently, this leaves for consideration only the issue of prejudice. Appellant makes no argument in her brief that she was. prejudiced by the trial court's decision but refers us, instead, to her memorandum in opposition below. We have reviewed that document and we are not persuaded that she has demonstrated any real or tangible injury as a result of the trial court's decision. Thus, we find no abuse of discretion in allowing appellees to amend their complaint.
Our ruling on this point is consistent with the spirit and policy behind the Civil Rules which is to resolve cases upon their merits and not upon pleading deficiencies. See State exrel. Huntington Ins. Agency, Inc. v. Duryee (1995), 73 Ohio St.3d 530,533, 653 N.E.2d 349, 353. The Ohio Supreme Court has consistently cautioned that cases should be decided on their merits whenever possible. State ex rel. Montgomery v. R DChem. Co. (1995), 72 Ohio St.3d 202, 204, 648 N.E.2d 821, 822;Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 3, 454 N.E.2d 951,952; Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175,297 N.E.2d 113, 122. A review of the evidence adduced at the trial in this case reveals that the cause sub judice was properly pursued as an action in adverse possession. It was therefor appropriate to allow amendment of the complaint in order to bring that pleading into conformity with the legal theory upon which appellees were proceeding. Although appellees might have requested their amendment earlier, the delay is not sufficiently egregious for us to find that the trial court abused its discretion in granting them leave.
Accordingly, we find that the first assignment of error is without merit and is hereby overruled.
 II
Appellant's second assignment of error is directed at the trial court's denial of her two (2) requests for leave to file motions for summary judgment.[7] Her supporting argument is somewhat confusing, however, as she appears to challenge the sufficiency of appellees' amended complaint rather than the decision denying her leave of court.
Specifically, appellant contends that the amended complaint did not give an adequate description of the realty being claimed by adverse possession and that she should have been allowed to contest that point on summary judgment. The refusal to grant leave of court, appellant continues, amounts to reversible error. We disagree.
First, this Court is not convinced that the amended complaint was so vague as to make it legally deficient. The Ohio Rules of Civil Procedure employ a concept of "notice pleading" which does not usually mandate any great degree of specificity; only that notice be given as to nature of the action. Seegenerally Gall v. Dye (Sep. 8, 1999), Lorain App. No. 98CA7183, unreported; Kehlmeier v. Morgan (Aug. 13, 1999), Lucas App. No. L-99-1034, unreported. Except for certain "special matters," set forth in Civ.R. 9, parties need only set out a short and plain statement showing that they are entitled to relief. See Civ.R. 8(A).
In the case sub judice, no questions arose during the trial court proceeding as to the particular property in dispute. The complaint, amended complaint and counterclaim(s) clearly put each side on "notice" that the dispute centered on the strip of land between the true boundary and the "occupation line" of the fence. Were it otherwise, and if appellant was truly confused as to the subject matter of this litigation, she could have filed a Civ.R. 12(E) motion for more definite statement or a Civ.R. 12(F) motion to strike an insufficient claim.
In any event, the real issue in this assignment of error is whether the trial court erred in denying her leave to file her motion(s) for summary judgment. We note that the decision of whether or not to grant such leave under Civ.R. 56(A) is left to the sound discretion of the trial court. See Brinkman v. Toledo
(1992), 81 Ohio App.3d 429, 432, 611 N.E.2d 380, 382; also seeManogg v. Stickle (Dec. 29, 1999), Licking App. No. 99CA82, unreported; DeTray v. Mount Carmel Health (Apr. 7, 1997), Franklin App. No. 96APE08-1010, unreported. It is not apparent from the record that granting appellant leave to file either (or both) of her motions would have cause any further appreciable delay in these proceedings or precipitated any undue prejudice to appellees. Thus, it may well be that some members of this Court might have exercised their discretion differently and allowed the motion(s) to be filed. That is not the standard, however, and we are keenly aware of the proposition that a reviewing court should not substitute its judgment for that of a trial court. See Stateex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728,732, 654 N.E.2d 1254, 1258; In re Jane Doe 1 (1991).57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, 1184; Berk v.Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308. We note that in order for a court to abuse its discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, and not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256,662 N.E.2d 1, 3. We find no evidence of that nature evident in the case sub judice.
Finally, although not dispositive of this case, we acknowledge the holding in Continental Ins. Co. v. Whittington
(1994), 71 Ohio St.3d 150, 642 N.E.2d 615, at the syllabus, wherein the Ohio Supreme Court held that any error in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial demonstrates that genuine, issues of material fact exists which support a judgment in favor of the party against whom the motion was made. The same general reasoning would apply here given that the trial on the merits revealed genuine factual disputes which ultimately produced a verdict in favor of appellees. Thus, any error in refusing to grant appellant leave of court to file her summary judgment motion(s) was harmless. See Civ.R. 61.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III
Appellant argues in her third assignment of error that the trial court erred in overruling her motion for directed verdict. We disagree.
At the outset we note that a motion for directed verdict under Civ.R. 50(A) requires the trial court to determine whether any evidence of substantial and probative value exists which supports the opposing party's case. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695, 586 N.E.2d 141, 142; Fitzgerald v.Mayfield (1990), 66 Ohio App.3d 298, 305, 584 N.E.2d 13, 18. The trial court is required to construe the evidence most strongly in favor of the non-moving party and it should not grant the motion unless reasonable minds could come to but one conclusion, and that conclusion is adverse to the non-moving party. See Clark v.Southview Hosp. Family Health Ctr. (1994), 68 Ohio St.3d 435,438, 628 N.E.2d 46, 48; Wise v. Timmons (1992), 64 Ohio St.3d 113,116, 592 N.E.2d 840, 843; Hawkins v. Ivy (1977), 50 Ohio St.2d 114,115, 363 N.E.2d 367, 368. Thus, the trial court must give the non-moving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland
(1994), 68 Ohio St.3d 521, 526, 629 N.E.2d 395, 399; Blair v.Goff-Kirby Co. (1976), 49 Ohio St.2d 5, 10, 358 N.E.2d 634, 637. We further note that in view of the fact that a motion for directed verdict tests the legal sufficiency of the evidence,Jaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320,333, 594 N.E.2d 9, 17; First Fed. Sav. Bank v. WSB Invest.,Inc. (1990), 67 Ohio App.3d 277, 281, 586 N.E.2d 1159, 1161, a trial court should neither weigh the evidence nor evaluate the credibility of witnesses. Malone v. Courtyard by Marriott L.P.
(1996), 74 Ohio St.3d 440, 445, 659 N.E.2d 1242, 1247; Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68,430 N.E.2d 935, 838.
Given that the determination of Civ.R. 50(A) motion involves a question of law rather than a question of fact, see Bentley v.Stewart (1992), 71 Ohio App.3d 510, 512, 594 N.E.2d 1061, 1062;Kobza v. Gen. Motors Corp. (1989), 63 Ohio App.3d 742, 746,580 N.E.2d 47, 49; Baum v. Augenstein (1983), 10 Ohio App.3d 106,107, 460 N.E.2d 701, 703, appellate courts apply a de novo standard when reviewing trial court decisions to grant or deny a directed verdict. See Keeton v. Telemedia Co. of S. Ohio (1994),98 Ohio App.3d 405, 409, 648 N.E.2d 856, 858; also see Bennett v.Gearhart (Jun. 17, 1996), Ross App. No. 94CA2073, unreported;Mulford v. Cols. Southern Ohio Elec. Co. (Jun. 7, 1994), Athens App. No. 92CA1548, unreported. With this in mind, we turn our attention to the proceedings below.
Appellant advances two (2) reasons why her motion for directed verdict should have been granted. First, she contends that appellees failed to prove the requisite elements of adverse possession. We are not persuaded. To acquire title by adverse possession, claimants must show exclusive possession and open, notorious, continuous and adverse use for a period of twenty-one (21) years. Grace v. Koch (1998), 81 Ohio St.3d 577, 579,692 N.E.2d 1009, 1011; also see Pennsylvania Rd. Co. v. Donovan
(1924), 111 Ohio St. 341, 349-350, 148 N.E. 479, 482; Gill v.Fletcher (1906), 74 Ohio St. 295, 78 N.E. 433, at paragraph three of the syllabus. Appellant never specifies which of these elements that she believes appellees failed to prove below. From our review of the transcript, however, we are satisfied that all of the elements were sufficiently demonstrated.
Clifford Elam testified below that he acquired appellees' property in 1952 when it was a vacant lot. He built the house which currently sits on the property in question and, approximately the same year, erected the fence which marked the disputed boundary line. Elam testified that he located the fence on what he thought was the true boundary between his land and the parcel to the north (now owned by appellant). Other witnesses corroborated the mistaken belief that this was the actual boundary. Darren Gahm, Julie Hall and Barbara Figlestahler all testified as to the periods of time when their families owned appellant's property and they all related that everyone assumed the fence marked the boundary between the two (2) tracts. Appellee Elmo Keller likewise testified that he had always assumed the fence to be the boundary line since he and his wife bought their land in 1984.
The testimony adduced at trial reveals that appellees, and their predecessors in title, had open, notorious, and exclusive possession of the disputed strip of land. Moreover, given the testimony of Mr. Elam, it appears that such-possession continued for more than forty (40) years prior to commencement of this action. The only issue which might possibly preclude judgment for appellees would be whether possession was sufficiently "adverse" considering that this case involved mutually mistaken beliefs as to the location of the boundary.
This particular issue has previously been addressed, however, and the Ohio Supreme Court has held that when one of two owners of adjoining lands hold actual, continuous, notorious and exclusive possession up to a certain line, though not originally the true one, for the full period of twenty-one (21) years, the statute of limitations applies in his favor and against the adjoining owner even though "such possession may have grown out of the mutual mistake of the parties . . . in respect to the locality of the true line between them." McAllister v. Hartzell
(1899), 60 Ohio St. 69, 91, 53 N.E. 715, 718; Yetzer v. Thoman
(1866), 17 Ohio St. 130 at the syllabus. Thus, when a particular boundary line's location is in dispute, it is not necessary to show knowledge or wrongful intent on the part of the adverse claimant. See Coburn v. Gebauer (Jan. 11, 1996), Seneca App. No. 13-95-14, unreported; Goetz v. Miller (Apr. 24, 1981), Ottawa App. No. 07-80-26, unreported. Again, in the instant case the evidence reveals no dispute that appellees and their predecessors in title held the land on their side of the fence as if it belonged to them, and that they did so for more than forty (40) years. It is equally uncontroverted that everyone involved has been under the mistaken belief that the fence is, in fact, the boundary. We thus conclude that sufficient evidence exists to avoid a directed verdict and that the trial court properly overruled appellant's motion.
Appellant counter argues that she should also have been granted a directed verdict because no legal description of the property was ever introduced into evidence. This argument fails for several reasons. First, a legal description has no direct bearing on the elements of appellees' claim (adverse possession) Rather, a description goes only to the issue of identifying the property if that claim is ultimately proven. Second, the record reveals no dispute as to precisely what property was at issue herein. All parties clearly understood that they were dealing with the eight (8) foot strip of land between the true boundary line and the so-called "occupation line" of the fence. Third, the survey prepared by appellant's own surveyor was admitted into evidence and clearly depicts the land in question. We recognize that this survey was not admitted until after the trial court denied appellant's motion for directed verdict. However, a review of the transcript reveals that the parties made frequent references to this survey throughout the course of these proceedings. Thus, it is difficult to believe that any serious questions arose as to what land was in dispute and we decline to hold that this would have been a proper basis upon which to direct a verdict in appellant's favor.
Thus, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV
Appellant argues in her fourth assignment of error that the trial court erroneously admitted into evidence the survey (Exhibit 40) which had been prepared by her surveyor. She points out that the surveyor, Graham Snyder, was never called as a witness to lay a foundation for this exhibit or to testify as to its authenticity. Thus, appellant concludes, the exhibit should not have been allowed into evidence and the judgment must be reversed because nothing else in the record sufficiently delineates the parameters of the land claimed by appellees through adverse possession. We disagree.
Admittedly, the better practice would have been to call the surveyor as a witness and have him provide testimony about the survey he prepared. The absence of such testimony, however, is not fatal in this particular case. As the trial court correctly noted, appellant and her counsel made frequent reference to this exhibit throughout the trial. Counsel mentioned the survey several times in his opening argument and appellant identified it by preparation date and the surveyor' s name during her own testimony. All this demonstrates, at the very least, a waiver of foundation and authenticity requirements if not an implicit stipulation to that effect.
We further note that appellant does not suggest that the survey is invalid, unauthentic, or inaccurate. Rather, she argues that appellees failed to satisfy the proper mechanical evidentiary requirements to admit the survey into evidence. However, given appellant's frequent reference to the survey, and considering that she offers no argument against its validity, we readily conclude that any error in failing to meet the proper evidentiary requirements was harmless. See Evid.R. 103(A) (error did not affect a substantial right); also see Civ.R. 61.
Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.
 V
Appellant's final assignment of error goes to the legal description employed by the trial court in its June 23, 1999 judgment. Appellant contends that no foundation was ever laid for the use of this description and that it should not have been incorporated into the judgment. We disagree.
Once again, we note our agreement with appellant that the better practice would have been to call the surveyor who prepared the description and have him testify as to its validity. Appellees' failure to do so is not fatal, however, because the metes and bounds description is easily verified by tracing it around the property shown on the survey. Moreover, as with the previous assignment of error, appellant makes no real argument that the description is incorrect and we will not reverse the judgment of the trial court when no prejudice has been demonstrated. See generally Hull v. Arrow Material Prods. (Sep. 1, 1995) Gallia App. No. 94CA25, unreported; Bobo v. Ohio Dept.Of Mental Health (Jun. 7, 1995), Athens App. No. 94CA1637, unreported; State v. Perotti (May 15, 1991), Scioto App. No. 89CA1845, unreported (no judgment will be reversed unless it affirmatively appears that the appellant has suffered prejudice).
Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Harsha, J. Evans, J.: Concur in Judgment Only.
 _____________________ Peter B. Abele, Judge
[1] We parenthetically note that the third assignment of error set forth in the body of appellant's brief is slightly different than the one set forth in her statement of assignment of errors.
[2] Ronald Sparks was also named as a defendant to this action, both in his individual capacity and, as an agent for appellant, but the claim against him was ultimately dismissed.
[3] Appellant claims in her brief that she first sought leave of court to file for summary judgment on January 7, 1996. However, after reviewing the record we are unable to find any such motion filed on that date. To the contrary, the docket sheet shows that she filed the motion on January 7, 1997, and we will therefore treat it as having been filed that year.
[4] Later in the trial, appellant also agreed to dismiss her trespass claim against appellees.
[5] The surveyor who prepared the survey for appellant in 1994 allegedly declined to prepare a metes and bound legal description from his previous work because he had been asked by appellant (his former client) to refrain from having any contact with appellees or their counsel. Thus, another surveyor was retained to prepare the description.
[6] We acknowledge, of course, that a portion of this delay was attributable to appellant who filed multiple motions for continuance as well as several affidavits of prejudice to disqualify the trial court judge below.
[7] With respect to her second request, appellant's actual argument on appeal is that the lower court erred in not ruling on her motion for leave. We note that if a lower court does not expressly decide a motion, a reviewing court will generally assume that the court overruled the motion. See Takacs v.Baldwin (1995), 106 Ohio App.3d 196, 209, 665 N.E.2d 736, 744;also see State v. Todd (Aug. 9, 1996), Pickaway App. No. 96CA01, unreported; State v. Seymour (Nov. 9, 1993), Pickaway App. No. 90CA38, unreported. Thus, we treat the assignment of error as asserting that the lower court erred in overruling both motions.